We will now hear argument in the case of Acevedo Castro v. Garland. I think we also have two more lawyers, also by Zoom. I believe Mr. Lucero is representing Mr. Acevedo Castro and Mrs. Snyder, I guess, for the government, right? That's correct, Your Honor. Okay, please proceed. Good morning, Your Honors. May I please report Richard Lucero on behalf of the petitioner, Ms. Gerber Acevedo. Your Honor, as I see this case, there are a few issues. The first issue would be the jurisdictional issue that the government raised in Mr. Blumenthal's citation. The other issue would be whether or not the petitioner has established a nexus between his political opinion and the persecution that he suffered. I will touch first on the jurisdictional issue. The government cited a second, third case and the Supreme Court case in Nicaragua for the proposition that prospectively going forward, these types of cases where there is an instituted prior removal order, the court should not have jurisdiction to hear petitions for review when they're filed more than 30 days after the reinstated removal order. This court has stated, specifically in Ortiz-Alfaro, that in cases where there's an instituted reinstated removal order, that removal order does not become final until the termination of the withholding proceedings, which is what occurred here. So, given that, I do believe that obviously the court has jurisdiction to hear this particular case. And also going forward, the court should continue to have jurisdiction to hear these particular types of cases. With respect to the nexus issue, I do believe that the evidence shows that the petitioner has sort of a nexus between his political opinion and his persecution. Counsel, this is a troubling case, unusual case, because you've got your client went to a meeting, arguably political opinion might be the PSG, but he had a woman in his truck who owed a debt. And the evidence seems to suggest that there is an equal or substantially similar amount of evidence that would suggest that the shots that were fired were by a creditor of hers as opposed to somebody who was trying to kill or hurt your client. My understanding of our precedent is, if you have two different explanations, both of which are, shall I say, rational, that if the IJ and the BIA say that they're going with one, they still win. In other words, the government still wins in that case. Can you cite me to any case law that would say that my understanding is incorrect on that regard? No, you are correct with respect to your analysis. But I would assert in this case that the petitioner has demonstrated that he was in fact persecuted based on his political opinion. The reason that I state that is he testified in great detail with the asylum officer regarding his political activities which occurred a few months before the shooting. Well, even if he did, I think Judge Smith's question is valid. There are two views. It's either A or B. And is there a requirement that the IJ or the BIA take the petitioner's position opposed to what the IJ or BIA found? No, I don't believe that there is a requirement that that be done. But I'm just pointing to the evidence. And I don't believe that the immigration judge's finding that it was based on his partner's assertion that it may have been due to some debt that she owed. I don't believe that finding this is viable. And I think there's overwhelming evidence that shows that it was actually in fact because of his political opinion. Why do you say it's not viable? As I understand it, his companion testified that she was saying she thought he was shot at because she had bigger debt. And that's the one that the IJ decided to credit because your client didn't know specifically why anybody would be shooting at him. He didn't have any enemies. He knew he had the political opinion. But the IJ chose to believe the woman's testimony and to credit the idea that a creditor had shot at her rather than that somebody unknown had shot at your client. And I get back to what I said before, and I think my colleague is saying the same thing. If you have two viable possibilities and the IJ credits one, my understanding of our case law is unless you can show that there's not substantial evidence to back that up, your client loses on that proposition. Isn't that correct? Yes, Your Honor. So my position would be that I think that the petitioner's assertion that it was because of his political opinion is the viable reason for being persecuted. If you look at the... Again, given my comment, that's right. Your client has alleged a possible explanation, but so has the woman in the case, and the IJ chose to favor her view and there's substantial evidence to back it up. We're not saying that your client didn't present evidence, it's just that the IJ chose to favor the one. Right? Yes, Your Honor. So as far as the substantial evidence, you state that the... That the substantial evidence that his partner was being retaliated against by a supposed loan shark. In that same witness, in the same... In the district attorney's report, the witness specifically stated that the person who was accused of retaliating against her called her and told her, I had nothing to do with this, I'll even help you try to catch whoever did this to you. So I think that there's substantial evidence that she was not being retaliated against by a loan shark. But that just has to do with weighing the evidence and the IJ weighed it differently, apparently. Right? Yes, that's correct, Your Honor. Do you want to save any of your time? Yes, Your Honor. Very well. All right, let's hear from the government, please. Good afternoon. Oh, good morning, Your Honors. Afternoon here. Good morning, Your Honors, and may you please report. My name is Alana Snyder and I'm appearing today on behalf of the United States Attorney General. Respectfully, we ask Your Honors to deny the petition for review as the record does not compel reversal of the immigration judge's affirmance of the negative reasonable fear determination. Can I ask you about the jurisdictional issue? Is it the government's view that Nasrallah overrules our prior decision in Ortiz-Alfaro? Yes, Your Honor. It's our position that Nasrallah v. Barr and Johnson v. Guzman-Chavez are clearly irreconcilable with this court's prior precedent in Ortiz-Alfaro and Ayala v. Sessions, which is also at play in this case. And so, because it's jurisdictional, we have to decide that issue before we can address the merits, correct? Yes, Your Honors. That's the government's position in this case. And I'm happy to elaborate on that position for you as to why these cases are clearly irreconcilable. If you can do that, please. Yes. In Nasrallah v. Barr, the Supreme Court spoke about what constitutes an order of removal. And in that case, it was specifically referencing or determining what an order of removal was for the purposes of a cat order. And first, the Supreme Court looked to the statutory definition of order of removal at 8 U.S. Code 1101-847A. And of course, that really doesn't have any relevance in this case because a negative reasonable fear determination or withholding only proceedings incident to a negative reasonable fear determination, there's no order that comes out of these proceedings. There's no order determining whether a noncitizen is removable or concluding that the noncitizen is removable. So second, the Supreme Court turned to whether or not withstanding a cat order in that case does not meet the statutory definition, it nevertheless merges into a final order of removal. So in determining whether a removability determination merges into an order of removal, the Supreme Court defined that any cat order does not merge into the final order of removal because it does not affect the validity of the removability determination. And because – sorry. So what do you think is the procedural vehicle for obtaining review of the negative credible fear determinations? Sure. It would be the government's position here that any review would be through a reinstated order of removal. This court has said before – The reinstated order happens and then 30 days runs and you don't have a determination necessarily on the withholding only application. That is true. You file a sort of premature appeal and then the proceeding completes and then you sort of go back to the earlier petition for review and that now subsumes the things that happened after. Is that your position as to how it works? That definitely could be the option, especially because in this jurisdiction you have ripening of a petition for review under Martinez v. Barr. And we also have, of course, 1252b9, the zipper clause, which would allow for – it doesn't apply in this particular case, but say, for example, a non-citizen moved on to withholding only determination and then got denied and wanted to challenge that at the court of appeals, they could then essentially zipper that into the petition for review filed from the reinstatement order. Let me ask you this. I imagine you're familiar with our case Miller v. Cammey. You know what I'm talking about with that? Yes. Okay. So if you take the concept that we have existing case law that would permit us to hear this case and you're saying that Nasrallah says the Supreme Court does something else, is it your view, the government's view, that under Miller v. Cammey, that what the Supreme Court has ruled there is irreconcilable with our existing case law? We cannot decide it any other way, and therefore we, in effect, have to overrule it or take it on back. Is that your recommendation? The government's position is that this panel can and should determine the jurisdictional issue because there is a clear reconcilability between Ortiz-Alfaro and Nasrallah v. Barr and Johnson v. Gozon-Chavez, and that this panel can, under Miller v. Cammey, rule on this jurisdictional issue. The one caveat to that position is that we are asking the court to provide perhaps a carve-out for individuals like the noncitizen in this case and apply the jurisdictional rule prospectively. And this is perhaps because there are noncitizens already in the pipeline and noncitizens like Mr. Acevedo-Castro who already have those reinstatement orders and are already challenging withholding of removal and they may be foreclosed from judicial review. With respect, that seems to fly in the face of at least my understanding of Miller v. Cammey. You're saying Miller v. Cammey should be the vehicle for adopting your position, yet you don't want us to mess with something that's in the pipeline, even though it may be irreconcilable? How do we reconcile your irreconcilability? Understood, Your Honor. It's more of a, you know, I think it's Miller v. Cammey as it's incumbent upon the court to sort of provide a clear picture of how to preserve judicial review moving forward for noncitizens, but for those noncitizens who are already in the pipeline. But the law is what the law is. And if you're right that the Supreme Court has said there's no jurisdiction, we can't just say, well, we'll do that prospectively. I mean, if the jurisdictional position in the other cases is wrong, it's wrong. And we don't have the ability to just say we're going to apply it prospectively.  The government does understand that position, and that is definitely a, it is, you know, again, the government understands that there are people in the pipeline who might be relying on. The Supreme Court years ago decided a split over whether or not the time to appeal was extended by a misrepresentation from the bench by the district court as to the time. And there were a lot of people in the pipeline whose jurisdiction depended on that. And the Supreme Court said, no, it doesn't work. And all those people were out of luck. That's just how it works with jurisdictional rules. We can't just sort of play on and off that, well, you know, we'll let these slide. And the law is what it is. If there's no jurisdiction, there's no jurisdiction. Right. And if the court so concludes, then, of course, in this case, the appropriate outcome that the government is asking for, then, would be dismissal of the petition for review. And, of course, not denial of the petition for review. Because, of course, the court would lack jurisdiction either way. Either it's because the negative reasonable fear determination is not a final order of renewal, or then that's pretty much it. I gather you would agree that your argument is a bit convoluted. Interesting, but a bit convoluted. Right? Of course, Your Honor. So, in this case, if there's any, Miller v. Gammie is, at least in my mind, really clear. It's got to be really irreconcilable. And I'm not getting that. I get the intellectual pinnings of what you're talking about. But it doesn't seem to be irreconcilable. Would you be able to eat lunch and feel good about it if we didn't blow this out on jurisdiction? Yes, Your Honor. Absolutely. I mean, I'm happy to turn to the merits of this case. Why don't we go this way? Sure. Absolutely. It's the government's position in this case that the immigration judge's determination that the petitioner failed to show a reasonable possibility that he could demonstrate nexus to a legally cognizable protected ground is supported by substantial evidence. And as Your Honor actually pointed out, there were unknown assailants here. The assailants in this case said nothing. And importantly, the passenger in the car identified a loan shark as the person who had threatened her five days prior to the incident. The loan shark had stated that he was going to collect a debt from her, threatened her explicitly. They were attacked outside of the passenger's home. The Guatemalan police explicitly stated in the police report that they were looking for and suspected this loan shark. And the petitioner told the Guatemalan police that he had no problem with anybody in Guatemala, and he was aware of the loan shark incident with the individual. And to the petitioner's point that he had joined the UNE four months prior to this, this singular, tenuous piece of evidence is insufficient to compel the conclusion that petitioner established nexus to his political opinion. And I can see that my time is running dangerously close to the end here, so if Your Honors have no further questions on either of the issues here. Other questions? I think not. So your timing is excellent. You've run out of time. Very well. Let's ask Mr. Lucero to use his rebuttal time then. Thank you, Your Honors. Just to touch on the jurisdictional issues. If we were to follow the Circuit's lead, this particular petitioner would not have any avenue or any mechanism to have an appellate review of the agency's denial of its reasonable fear claim or withholding claim. So that raises serious constitutional issues. This court themselves said, in deciding the Ortiz-Alvaro case, that denying judicial review in these particular circumstances raises serious constitutional concerns. So to assert that the petitioner has to file a petition for review after his prior removal is reinstated, doesn't make any sense at that point. He doesn't have a claim. In this particular case, he was not interviewed by the asylum officer until nine months later. So it doesn't make any sense for him to file a petition for review after his removal order was reinstated. So, again, if we were to follow the Second Circuit lead, it would leave petitioners in this particular circumstance without any judicial review of their denials. Is that your best argument against the government's position on jurisdiction? Yes, Your Honor. I would argue that there would be constitutional issues because they would have no appellate review of the denial of their withholding claims. Do you have other arguments you'd like to make? You've got a little bit more time. No, I will submit the rest at this point, Your Honor. Very well. Any other questions by my colleagues? All right, thanks to both counsel for your argument in this case. The case just argued is submitted.
judges: Kelly, SMITH, COLLINS